## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

Case No. _____

6:12-CV-1833-ORL-19KRS

UNITED STATES OF AMERICA, *ex rel.*
JAN WATFORD-GRANGER and
PATRICK CONLISK,

      Plaintiffs/Relators,

v.

MEDICAL SERVICES OF AMERICA,
INC., a foreign corporation,

      Defendant.

_____/

**FILED *IN CAMERA*
UNDER SEAL**

**JURY TRIAL DEMANDED**

## AMENDED QUI TAM COMPLAINT
## PURSUANT TO 31 U.S.C. §§ 3729-3732
## OF THE FEDERAL FALSE CLAIMS ACT

Plaintiffs/Relators, Jan Watford-Granger and Patrick Conlisk, bring this *qui tam* action under 31 U.S.C.§3729, *et seq.*, as amended (the "False Claims Act") to recover damages, penalties and other remedies established by the False Claims Act on behalf of the United States, against Defendant Medical Services of America, Inc., a foreign corporation, and allege:

### INTRODUCTION

1.     This is an action to recover damages and civil penalties on behalf of the United States of America arising from false statements and claims made or caused to be made by Defendant to the United States and its agents and intermediaries in violation of the False Claims Act, 31 U.S.C §§ 3729 *et seq.* (the "FCA").

2.     Defendant fraudulently submitted bills to Medicare for home health care services that were not authorized or prescribed by physicians and that were not authorized pursuant to Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, popularly known as the Medicare

Case 6:12-cv-01833-PGB-KRS  Document 4  Filed 12/07/12  Page 2 of 25 PageID 163

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 2 of 25*

Program.

3.     *Qui tam* Plaintiffs/Relators Jan Watford-Granger and Patrick Conlisk bring this action on behalf of the United States Government.

4.     Jan Watford-Granger is a resident of Gwinnett County, Georgia and an employee of Defendant. Mrs. Watford-Granger currently serves as a Regional Director for Defendant.

5.     Patrick Conlisk is a resident of Seminole County, Florida and an employee of Defendant. Mr. Conlisk currently serves as a Director of Professional Services for Defendant.

6.     Medical Services of America, Inc. ("MSA") is a foreign corporation with its corporate headquarters located in Lexington, South Carolina.  MSA is a comprehensive home healthcare provider that offers home healthcare, hospice service, home medical equipment and other services.   At all material times, MSA maintained and owned locations across the country in Florida, Georgia, Indiana, Kentucky, Maryland, Nevada, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Virginia and West Virginia. At all material times, MSA conducted business in the Southern, Middle and Northern Districts of Florida.

## JURISDICTION AND VENUE

7.     The Court has jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to the FCA.  Under 31 U.S.C. § 3730(e), there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint. Plaintiffs/Relators, moreover, would qualify under that section of the False Claims Act as "original sources" of the allegations in this Complaint even had such a public disclosure occurred.

8.     The Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. §

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 3 of 25*

3732(a), which authorizes nationwide service of process and because Defendant can be found in and transacts the business that is the subject matter of this lawsuit in the Middle District of Florida.

9.      Venue is proper in the Middle District of Florida pursuant to 31 U.S.C. § 3732(a), as the acts proscribed by 31 U.S.C. §§ 3729 *et seq*. and complained of herein took place in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(b) and (c), as at all material times, Defendant transacts and transacted business in the Middle District of Florida.

## BACKGROUND

10.      Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act.  The 1986 amendments enhanced the government's ability to recover losses sustained as a result of fraud against the United States.

11.      The FCA provides that any person who knowingly submits, or causes to be submitted to the government or recipients of federal funds, a false or fraudulent claim for payment or approval, is liable for a civil penalty of between $5,000.00 and $11,000.00 for each such claim, and three times the amount of damages sustained by the government.  The FCA empowers persons having information regarding a false or fraudulent claim against the government to bring an action on behalf of the government and to share in the recovery.  The original complaint must be filed under seal, without service on Defendants.  That complaint remains under seal while the government investigates the allegations and determines whether to join the action.

12.      As required by the False Claims Act, 31 U.S.C. § 3730(b)(2),  Plaintiffs/Relators have provided to the Attorney General of the United States and to the United States Attorney for the Southern District of Florida a statement of all material evidence and information related to

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 4 of 25*

the Complaint.   This disclosure statement is supported by information known to Plaintiffs/Relators and any and all evidence in their possession at the time of filing.  Because the statement includes attorney-client communications and is submitted to the Attorney General and to the United States Attorney in their capacity as co-counsel in the litigation, the Plaintiffs/Relators understand that this disclosure is confidential.

13.     Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 - 1395, establishes the Health Insurance for the Aged and Disabled Program, popularly known as the Medicare Program. The Medicare Program has four parts:  Medicare Parts A through D.  Medicare Part A pays for hospital, skilled nursing, and home health services.  Medicare Part B pays for physician and ancillary services, including office visits and laboratory and diagnostic tests and procedures. Medicare Part C authorizes the creation of Medicare Advantage Plans.  Part D is Medicare's prescription drug program.

14.     Medicare is funded by insurance premiums paid by enrolled Medicare beneficiaries and contributions from the Federal Treasury. Eligible individuals who are age 65 or older, or disabled, may enroll in the program.

15.     In order to be reimbursed by Medicare for services rendered to Medicare beneficiaries, all healthcare providers, including private insurance carriers, Medicare advantage organizations, clinics, medical practices, independent diagnostic testing facilities, and individual physicians, must comply with applicable statutes, regulations and guidelines.  All providers that bill Medicare for services also have a duty to be knowledgeable about the statutes, regulations and guidelines regarding coverage for those services. Among other things, Medicare statutes provide that Medicare covers only reasonable and necessary medical services. *See* 42 U.S.C. § 1395y(a) (1) (A); *see also* 42 U.S.C. § 1320c-5(a) (1). Similarly, Medicare regulations explicitly

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 5 of 25*

exclude from payment services that are not reasonable and necessary for the diagnosis or treatment of illness or injury. *See* 42 CFR 411.15(k) (1).

16.     Pursuant to 42 CFR § 424.22, Medicare will pay for home health services only if a physician with knowledge of an individual patient's specific needs certifies and/or recertifies, among other things, that: 1) the individual needs or needed intermittent skilled nursing care; 2) home health services were required because the individual was confined to the home except when receiving outpatient services; and 3) the treating physician completed a face-to-face patient encounter, which is related to the primary reason the patient requires home health services. Medicare regulations require that the face-to-face encounter occur within ninety (90) days of the home health admission date or within thirty (30) days after the home health admission date. Medicare regulations further require that the face-to-face encounter must be specific to the reason that the individual would be treated under the home health Medicare program.

17.     As set forth herein, MSA violated the FCA by seeking reimbursement from the United States Government for home health services under circumstances where it was not entitled to payment.

## FACTUAL ALLEGATIONS

**A. MSA failed to complete the required face-to-face encounters for its home health care patients and its physicians falsely certified that patients were under the care of the Attending Physician at MSA that completed the required Form 485.**

18.     The Medicare approved form to certify that a patient qualifies for home health care is known as a form CMS-485 and is entitled "Home Health Certification and Plan of Care". The Form 485 contains a great deal of information including, without limitation, the patient's identifying information, the diagnoses for which home health care is deemed appropriate,

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 6 of 25*

pertinent physicians' orders for treatment, the goals of treatment and a discharge plan. The Form

485 also requires the signature of an attending physician who certifies as follows:

> I certify/recertify that this patient is confined to his/her home and needs intermittent skilled nursing care, physician therapy and/or speech therapy or continues to need occupational therapy. The patient is under my care, and I have authorized the services of this plan of care and will periodically review the plan.

[Form 485, ¶26]. Paragraph 28 of the Form 485 states, "Anyone who misrepresents, falsifies, or

conceals essential information required for payment of Federal funds may be subject to fine,

imprisonment, or civil penalty under applicable Federal laws. [Form 485, ¶28].

19.     MSA physicians routinely, and in violation of to 42 CFR § 424.22, certified that a

patient qualified for home health care without conducting the required face-to-face patient

encounter and under circumstances where the patient was not under the care of the physician

making the required certification. As a company wide practice, the required face-to-face

encounters were completed by staff members of the particular home health agency. Some of

those staff members were marketing account executives of MSA. These MSA employees would

document the reasons for the home health admission and would often assign their own diagnosis

and home bound status related statements. The MSA account executive of staff member would

then take the Form 485 to a physician for his or her signature thus creating the false impression

that the required face-to-face encounter was completed by a qualified physician. MSA would

then forward the fraudulent Forms 485 to Medicare and billed Medicare for the services rendered

to those patients. For example, and without limitation, Kristy Magee, M.D., a physician

employed by MSA as its Medical Director, signed as the Attending Physician for hundreds and

potentially thousands of patients without conducting the required face-to-face encounter and

under circumstances where she falsely certified that the patients were under her care when they

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 7 of 25*

were not under her care.  Examples of this conduct include, without limitation:

 a. Dr. Magee signed as the Attending Physician for Patient "A" on or about November 18, 2010.  Dr. Magee never conducted the required face-to-face encounter with Patient "A" and falsely certified that Patient "A" was under her care when, in truth and in fact, Patient "A" was not under her care.  Dr. Magee subsequently signed as the Attending Physician for Patient "A", recertified Patient "A"'s eligibility for home health care and executed additional Forms 485 for Patient "A" on February 9, 2011, June 23, 2011 and July 21, 2011.  Dr .Magee never conducted the required face-to-face encounters with Patient "A" in connection with any of the recertifications and Patient "A" was not under her care during the times that the recertifications were executed.  Copies of the redacted Forms 485 relating to Patient "A" are attached hereto as Composite Exhibit "A".

 b. Dr. Magee signed as the Attending Physician for Patient "B" on or about September 1, 2011.  Dr. Magee never conducted the required face-to-face encounter with Patient "B" and falsely certified that Patient "B" was under her care when, in truth and in fact, Patient "B" was not under her care.  A copy of the redacted Form 485 relating to Patient "B" is attached hereto as Exhibit "B"

 c. Dr. Magee signed as the Attending Physician for Patient "C" on or about October 6, 2011.  Dr. Magee never conducted the required face-to-face encounter with Patient "C" and falsely certified that Patient "C" was under her care when, in truth and in fact, Patient "C" was not under her care.  Dr. Magee subsequently signed as the Attending Physician for Patient "C", recertified Patient "C"'s eligibility for home health care and executed an additional Form 485 for Patient "C" on October 27, 2011.

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 8 of 25*

Dr .Magee never conducted the required face-to-face encounter with Patient "C" in connection with the recertification and Patient "C" was not under her care during the time that the recertification was executed. Copies of the redacted Forms 485 relating to Patient "C" are attached hereto as Composite Exhibit "C".

d. Dr. Magee signed as the Attending Physician for Patient "D" on or about November 18, 2010. Dr. Magee never conducted the required face-to-face encounter with Patient "D" and falsely certified that Patient "D" was under her care when, in truth and in fact, Patient "D" was not under her care. Dr. Magee subsequently signed as the Attending Physician for Patient "D", recertified Patient "D"'s eligibility for home health care and executed an additional Form 485 for Patient "D" on January 20, 2011. Dr. Magee never conducted the required face-to-face encounter with Patient "D" in connection with the recertification and Patient "D" was not under her care during the time that the recertification was executed. Copies of the redacted Forms 485 relating to Patient "D" are attached hereto as Composite Exhibit "D" .

e. Dr. Magee signed as the Attending Physician for Patient "E" on or about July 21, 2011. Dr. Magee never conducted the required face-to-face encounter with Patient "E" and falsely certified that patient "E" was under her care when, in truth and in fact, Patient "E" was not under her care. A copy of the redacted Form 485 relating to Patient "E" is attached hereto as Exhibit "E".

20.     In addition to the foregoing, Dr. Magee signed as Attending Physician for the following patients, none of whom she encountered face-to-face and none of whom were under her care although she falsely certified that they were:  a) Patient "F" on June 18, 2010, August 12, 2010, October 7, 2010, December 29, 2010 and April 7, 2011; b) Patient "G" on July 21,

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 9 of 25*

2011; c) Patient "H" on September 1, 2011; d) Patient "I" on December 15, 2011; e) Patient "J" on June 18, 2010, August 12, 2010, October 7, 2010 and April 7, 2011; f) patient "K" on March 3, 2011; g) Patient "L" on October 6, 2011; h) Patient "M" on July 21, 2011; i) Patient "N" on September 1, 2011; j) Patient "O" on December 29, 2010 and July 21, 2011; k) Patient "P" on September 2, 2010, November 18, 2010 and January 20, 2011; Patient "Q" on April 7, 2011; l) Patient "R" on November 18, 2010 and February 9, 2011; Patient "S" on October 27, 2011. Copies of the redacted Forms 485 relating to Patient "F" through Patient "S" are attached hereto as Exhibits "F" through "S".

21.     Dr. Magee admitted to Plaintiff/Relator, Jan Watford-Granger, that she did not conduct the required face-to-face encounters with patients for whom she signed Forms 485 as the Attending Physician and that the patients for whom she signed Forms 485 were not under her care. Dr. Magee further admitted to Plaintiff/Relator, Jan Watford-Granger, that she was instructed by MSA to sign Forms 485 as the Attending Physician even though no face-to-face encounters occurred and even though those patients were not under Dr. Magee's care.

22.     Plaintiffs/Relators have attached and described a small sampling of the instances in which Dr. Magee falsely certified that patients were under her care in Forms 485 and in which no face-to-face encounters occurred. Plaintiffs/Relators are in possession of documents detailing such instances in many other patients.

23.     In addition to Dr. Magee, the following doctors at MSA were identified in internal e-mail correspondence from MSA on October 3, 2012, as not having performed the required face-to-face encounters with specific patients:

> Dr. Anthony Altriste, Dr. Guillermo Marrero, Dr. Charles Batson,
>
> Dr. Krum, Dr. Vajih Khan, Dr. Harvey Schefsky, Dr. Tabarak

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 10 of 25*

Quereshi, Dr. Karen Miller, Dr. Kimberly Keller, Dr. MacFarland, Dr. Michael Dillehay, Dr. Haseeb Kasim, Dr. Barbara Schwartz, Dr. Potenciano Gonzales, Dr. Balasubrimanian, Dr. Kelly Higgins, Dr. Douglas Childs, Dr. Rajiv Chaandra, Dr. Julie Ferguson, Dr. Neil Patterson, Dr. Krina Shah, Dr. Sukhinder Joshi, Dr. Ashwinkumar Patel, Dr. Taras Kochno, Dr. Kurshid Ahmed, Dr. Jamal Abuswa, Dr. Jesse Johnson, Dr. Uppalapati, Dr. Painter, Dr. Leon Cohen, Dr. Sabapathy, Dr. Mark Spears, Dr. Stewart Potomski, Dr. Donald Dehaven, Dr. Joven Garcia, Dr. Kenneth Sands, Dr. Zafar Sharar, Dr. Kimberly McGrath, Dr. Dusan Sabol, Dr. Jane Spies, Dr. Bhat, Dr. Sriramineni, Dr. Margaret Rank, Dr. Ming Lai, Dr. Sarunas Skirk, Dr. Harrish Sadwani, Dr. Myo Win, Dr. Vinay Kumar, Dr. Luc Teurlings, Dr. Tarschi, Dr. Tony Lombardo and Dr. Janet Anciro.

24.     In spite of the fact that the doctors identified in Paragraph 23 did not perform the required face-to-face encounters in accordance with governing law, MSA sought reimbursement from Medicare for those patients and received money from the United States Government for those patients.

25.     Moreover, upon information and belief, other physicians at MSA in various regions of the country also signed as Attending Physicians on Forms 485 under circumstances where the required face-to-face encounters did not take place in accordance with governing law and routinely falsely certified that patients were under their care.

26.     MSA maintains a report known as a "Face to Face Attestation Report". These

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 11 of 25*

reports are maintained for each MSA patient that receives home health services. Plaintiffs/Relators are in possession of several hundred pages of such reports that reflect that the required face-to-face encounters did not take place with regard to hundreds of patients in one region of the United States. Plaintiffs/Relators believe that other Face to Face Attestation Reports for other regions of the United States also reflect the absence of the required face-to-face encounters for patients receiving home health services.

27.     MSA sought reimbursement for and was improperly paid money by the United States Government in connection with patients receiving home health services with whom no face-to-face encounters occurred and that were not under the care of the Attending Physician that certified the need for such home health services.

### B. MSA sought reimbursement for home health services for patients that it knew were not confined to their homes.

28.     MSA learned that many of its patients that had been approved for home health services were not, in fact, confined to their homes and instead were completely ambulatory and even drove their own vehicles to outings that were not medically related. For example, MSA learned that its therapist tried for several days in September 2012 to contact Patient "S" who was supposed to be confined to her home and receiving home health services. The therapist was unable to reach the patient for days and finally spoke with the spouse of Patient "S" who advised that Patient "S" was 'out with the ladies". This information was confirmed in internal e-mail correspondence from MSA dated September 19, 2012. Even after learning this information, MSA continued to improperly seek reimbursement for home health services for Patient "S".

29.     MSA learned that Patient "T", a homebound patient receiving home health services, refused visits from a physical therapist and canceled her visits in September 2012.

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 12 of 25*

When the therapist called Patient "T" to let Patient "T" know that the therapist was on her way to Patient "T"'s home, Patient "T" explained that Patient "T" had errands to run and could not stay in the house anymore. The therapist explained the meaning of "homebound" and Patient "T" stated that Patient "T" was not a homebound patient. In an earlier conversation with the therapist, Patient "T" claimed that Patient "T" could not undergo therapy because Patient "T" had to go babysit a three (3) year old child. This information was confirmed in internal e-mail correspondence from MSA dated September 11, 2012 September 13, 2012. Even after learning this information, MSA continued to improperly seek reimbursement for home health services for Patient "T".

30.    MSA learned that Patient "U", a homebound patient receiving home health services, stated that Patient "U' would be leaving on vacation for one month. This information was confirmed in internal e-mail correspondence from MSA dated September 25, 2012. Even after learning this information, MSA continued to improperly seek reimbursement for home health services for Patient "U".

31.    There are many other examples of "homebound" patients that MSA knew were not confined to their homes yet MSA continued to improperly bill the United States Government for home health services.

32.    Upon discovering the misrepresentations made by MSA to the United States Government, Plaintiff/Relator, Jan-Watford Granger, brought them to the attention of MSA and urged MSA to advise Medicare of the misrepresentations and write off MSA's bills that were improper. MSA refused.

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 13 of 25*

### C. MSA improperly billed Medicare for patients that received home health services for excessive amounts of time under circumstances where home health care was unreasonable and not medically necessary.

33.     As per Medicare regulations, patients receiving home health care services must be reassessed every sixty (60) days to determine if the patient continues to qualify for those services. At the end of the sixty (60) day episode, a decision must be made whether or not to recertify the patient for a subsequent sixty (60) day episode. An eligible patient who qualifies for a subsequent sixty (60) day episode would start the subsequent sixty (60) day episode on day sixty-one (61). The average patient receiving home health services does not generally continue to receive those services in excess of six (6) months. For patients that require such services for more than a year, those patients are typically transferred to an assisted living facility as home health services are not designed or intended to apply for extended periods of time. If a patient continues to receive home health services for an extended period of time, such home health services are not considered medically necessary, are unreasonable and are, therefore, not properly payable by Medicare.

34.     Documentation must support the medical necessity for the services rendered. Medical necessity documentation will reflect changes in a patient's status which require physician orders, treatments and other skilled services to satisfy Medicare criteria. MSA set a goal to maintain a high recertification rate and exerted pressure on its administrators to maintain a high recertification rate of its patients. In many cases, MSA recertified the need for continued home health services for years without any changes in a patient's condition to necessitate further skilled services and under circumstances where home health services were not medically necessary or reasonable. MSA's practice of improperly recertifying patients for continued home

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 14 of 25*

health services occurred in all geographic regions where MSA maintained offices and Plaintiffs/Relators believe that this company-wide practice resulted in thousands of fraudulent claims being made to Medicare. Plaintiff/Relator, Jan Watford-Granger, specifically advised MSA's directors and officers that its practice of recertification violated Medicare regulations. MSA refused to change its recertification practices.

35.     At all relevant times, MSA maintained, in electronic format, a form report entitled, "Length of Stay Report" which reflected the admission date, discharge date and total number of days a patient at MSA continuously received home health services.

36.     In only one of its geographic locations, MSA had in excess of 650 patients that continued to receive home health services in excess of one (1) year and that received numerous sixty (60) day extensions. In some instances, patients continued to receive home health services for years and Plaintiffs/Relators are aware of at least two (2) patients that continuously received home health services at MSA for almost ten (10) years. Some of these patients include, without limitation, the following:

a. Patient "V" was admitted to home health care at MSA on July 30, 2001 and continuously received home health services until April 7, 2011 – approximately 3,539 days. Patient "V" received sixty (60) day extensions over 58 times.

b. Patient "W" was admitted to home health care at MSA on April 5, 2003 and continuously received home health services until December 19, 2011 – approximately 3,240 days. Patient "W" received sixty (60) day extensions over 54 times.

c. Patient "X" was admitted to home health care at MSA on July 21, 2003 and continuously received home health services until August 13, 2010– approximately 2,581 days. Patient "X" received sixty (60) day extensions over 43 times.

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 15 of 25*

d.  Patient "Y" was admitted to home health care at MSA on October 12, 2005 and continuously received home health services until September 4, 2012 – approximately 2,520 days.  Patient "Y" received sixty (60) day extensions over 42 times.

e.  Patient "Z" was admitted to home health care at MSA on September 22, 2003 and continuously received home health services until August 10, 2010– approximately 2,515 days.  Patient "Z" received sixty (60) day extensions over 41 times.

f.  Patient "AA" was admitted to home health care at MSA on July 12, 2005 and continuously received home health services until December 7, 2011 – approximately 2,340 days.  Patient "AA" received sixty (60) day extensions over 39 times.

37.     In the same geographic region as the patients identified in Paragraph 34, Plaintiffs/Relators are aware of: five (5) other patients that continuously received home health services at MSA in excess of 2,000 days; seventy-eight (78) other patients that continuously received home health services at MSA in excess of 1,000 days; 560 other patients that continuously received home health services at MSA in excess of 365 days; and 1093 other patients that continuously received home health services at MSA in excess of 180 days.

38.     Plaintiffs/Relators believe that thousands of other patients at MSA in its other geographic regions also received home health services far in excess of the time needed and thus received them under circumstances where such services were not medically necessary, were unreasonable and not properly payable by Medicare.

39.     For each of the patients identified in Paragraphs 34 and 35, home health services were provided by MSA under circumstances where such services were not reasonable or medically necessary.  For each of the patients identified in Paragraphs 34 and 35, MSA billed Medicare for medically unnecessary and unreasonable home health services.  For each of  the

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 16 of 25*

patients identified in Paragraphs 34 and 35, MSA was paid by Medicare for providing medically unnecessary and unreasonable home health services.

### D. MSA improperly upcoded patient diagnoses to provide more services and receive more money from Medicare.

40.     For years at MSA, including the period of time from Novermber 2008 through January 2012, coding was performed by a non-licensed, non-certified coder. An administrator at MSA would use computer programs such as PPS Plus to assess the potential reimbursement of various diagnosis codes pertaining to patients. MSA administrators directed coders at MSA to organize the diagnosis codes of patients in a certain order so as to obtain the largest reimbursement from Medicare. MSA employees improperly changed the diagnosis codes of patients from the initial assessment so that codes with higher reimbursements were used.

41.     One Administrator at MSA, Donna Chernot Smargon, acting in concert with an improperly trained and credentialed employee of MSA, used the PPS Plus software program to select the most lucrative diagnoses for patients to enhance the reimbursement from Medicare of each claim. Contrary to Medicare regulations, the coding for such patients was not consistent with the primary reason for which the patient was to receive home health services. Ms. Smargon ordered skilled services commensurate with the upcoded diagnoses so that MSA would realize an approximate 30% profit margin. MSA utilized this model of upcoding as a company wide practice to obtain the largest reimbursement from Medicare.

42.     MSA officers and directors were aware of this improper practice. Instead of changing this practice and offering to reimburse Medicare the money MSA was improperly paid, MSA praised Ms. Smargon for her high profit margin realized for the company. At a National Summit meeting of MSA in 2010, MSA recognized Ms. Smargon and another MSA

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 17 of 25*

Administrator, Bob Lippert, as outstanding administrators for MSA based on their high profit margins realized for MSA. MSA proudly announced at the National Summit that Mr. Lippert provided a 50% profit margin for MSA for twenty (20) years.

43.      Examples of improper upcoding of diagnosis codes include Patient "BB". Patient "BB" was evaluated by Dr. Ricardo Henriques, M.D. on August 2, 2010. Dr. Henriques' impression of Patient "BB" included, "[H]ypothyroid, high lipids, osteoarthritis, history of prostate cancer, heart murmur, edema, insomnia, reactive depression, and bladder outlet obstruction." In the Form 485 dated November 29, 2010 submitted to Medicare by MSA for Patient "BB", his diagnoses included  "Paralysis Agitans" (Parkinson's Disease) and Vertigo under Code 438.85. Patient "BB" was not assessed for Parkinson's Disease yet this diagnosis appears in the Form 485 and MSA sought and received reimbursement for that diagnosis. Moreover, Code 438.85 for Vertigo is reserved for patients that have suffered a stroke and are experiencing Vertigo. Patient "BB" had not suffered a stroke and the improper diagnosis code for Vertigo was used. The improper Vertigo code resulted in higher reimbursement for MSA than the correct Vertigo Code – 780.4.

On April 7, 2011, another Form 485 was completed by MSA for Patient "BB". This time, Patient "BB"'s Principal Diagnosis was changed from "Hypertension NOS" to "Paralysis Agitans". The same improper code for Vertigo was used – 438.85. The improper coding for Paralysis Agitans and Vertigo continued in subsequent Form 485s submitted to Medicare by MSA for Patient "BB" on June 3, 2011, June 30, 2011, July 16, 2011, October 20, 2011, November 22, 2011, January 20, 2012, April 17, 2012, and July 13, 2012. On July 24, 2012, the diagnosis of Vertigo disappeared from the Form 485 for Patient "BB" but Paralysis Agitans remained. The diagnosis of Vertigo under the improper code reappeared in the Form 485 dated

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 18 of 25*

October 5, 2012 along with the improper diagnosis of Paralysis Agitans. Redacted copies of the

Forms 485 for Patient "BB" as well as other pertinent medical records are attached hereto as

Exhibit "T".

44.     Plaintiff/Relator, Patrick Conlisk, specifically told the coder at MSA that MSA

was using the wrong code for Vertigo for this and other patients which resulted in MSA being

reimbursed more money from Medicare. Finally, after months of attempting to convince MSA

to correct the improper code, the proper code of 780.4 for "Dizziness and Giddiness" appeared in

the Form 485 for Patient "BB" . MSA did not however, notify Medicare that it had improperly

billed and received payment for the higher code of Vertigo under 438.85 and MSA kept the

funds it had been paid for that improper diagnosis for Patient "BB" and many other patients.

45.     Patient "CC" was evaluated in a Face to Face Encounter at MSA for home health

services on October 18, 2011. The diagnosis for Patient "CC" was, "Lumbago, Sciatica, Muscle

Spasm, Falls". The Form 485 submitted by MSA for Patient "CC" on November 22, 2011

indicated that her Principal Diagnosis was "Hypertension NOS" and included other dianoses for

"Tremor NEC" and "Obst Chr Bronc w/o Exac". The diagnoses for which MSA sought

reimbursement for Patient "CC" did not match the diagnoses for that patient as indicated in the

Face to Face Document dated October 18, 2011. The diagnoses on the Form 485 for that patient

had been upcoded from those contained in the Face to Face Document so that MSA could collect

more money from Medicare. The improper upcoded diagnoses for Patient "CC" continued in

Forms 485 on April 6, 2012, June 8, 2012, August 20, 2012 and September 27, 2012. Redacted

copies of the Forms 485 for Patient "CC" as well as other pertinent medical records are attached

hereto as Exhibit "U".

46.     MSA has submitted hundreds if not thousands of claims for reimbursement to

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 19 of 25*

Medicare based on diagnosis codes that were improperly upcoded so that MSA could receive greater remuneration from Medicare than that to which it was entitled.

47.     MSA knowingly submitted such false claims to Medicare and was paid by Medicare for such improper upcoded diagnoses.

48.     MSA had actual knowledge that its representations to the Government were false and they intended to deceive the United States Government in making these representations and to profit from them.   The United States Government reasonably relied on these misrepresentations.  In the alternative, MSA acted with a reckless disregard for the truth of the information contained in the representations made to the United States Government.

49.     As a result of its misrepresentations, MSA violated 42 CFR § 424.22 and the United States Government has been damaged and has paid for home health services that were not authorized.

50.     Plaintiffs/Relators have direct and personal knowledge related to MSA's fraudulent procurement of Medicare reimbursements.

51.     The facts upon which Plaintiffs/Relators rely in bringing this action have not been previously disclosed to the public, and Plaintiffs/Relators are original sources within the meaning of the FCA.

**COUNT I**
**False Claims Act: Presentation of False Claims**
**(31 U.S.C. §3729(a)(1))**

52.     Plaintiffs/Relators re-allege and incorporate the allegations of paragraphs 1- 51.

53.     As set forth in Paragraphs 18 through 51 herein, MSA knowingly and intentionally presented or caused to be presented false or fraudulent claims for payment or approval to the United States, including claims for reimbursement for services for which MSA

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 20 of 25*

was not entitled to payment. MSA improperly and intentionally sought reimbursement for home health services that were neither reasonable nor medically necessary and for which MSA was not otherwise entitled to reimbursement.

54.     MSA had actual knowledge that its representations to the United States were false and it intended to deceive the United States in making these representations and to profit from them. The United States Government reasonably relied on these misrepresentations. In the alternative, MSA acted with a reckless disregard for the truth of the information contained in the representations made to the United States Government.

55.     The United States, unaware of the falsity of the bills for services, and in reliance on the accuracy thereof, paid money to MSA that would not have been paid had it been known of the falsity of the claims submitted by MSA.

56.     By reason of the false and fraudulent claims presented or caused to be presented by MSA , the United States suffered damages and therefore is entitled to statutory damages under the FCA, to be determined at trial, plus a civil penalty for each violation.

WHEREFORE, Plaintiffs/Relators respectfully request this Court enter judgment against MSA as follows:

a.  MSA  be compelled to cease and desist its perpetration of violations of the False Claims Act, 31 U.S.C. §§ 3729 et seq.;

b.  MSA  pay an amount equal to three times the amount of damages the United States has sustained due to its actions, plus a civil penalty against MSA of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

c.  Plaintiffs/Relators be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 21 of 25*

d.  Plaintiffs/Relators be awarded all costs of this action, including attorney's fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d) and (h); and

e.  The United States and Plaintiffs/Relators be granted all such other relief as the Court deems just and proper and demands a trial by jury of all issues triable as a matter of law.

**COUNT II**
**False Claims Act: Making or Using a False**
**Record or Statement to Cause Claim to be Paid**
**(31 U.S.C. §3729(a)(2))**

57.   Plaintiffs/Relators re-allege and incorporate the allegations of paragraphs 1- 51.

58.   As set forth in Paragraphs 18 through 51 herein, MSA knowingly made, used or caused to be made or used, false records or statements, i.e., the false Forms 485 and other records submitted by MSA to obtain payment from the United States.

59.   MSA had actual knowledge that its statements and records submitted to the United States were false and it intended to deceive the United States Government in making these representations and to profit from them.  The United States Government reasonably relied on these misrepresentations.  In the alternative, MSA acted with a reckless disregard for the truth of the information contained in the representations made to the United States Government.

60.   The United States, unaware of the falsity of the records and statements submitted by MSA, and in reliance on the accuracy thereof, paid money to MSA that would not have been paid had it been known of the falsity of the claims submitted by MSA.

61.   By reason of the false records or false statements made or caused to be made by MSA, the United States suffered damages and therefore is entitled to statutory damages under the FCA, to be determined at trial, plus a civil penalty for each violation.

WHEREFORE, Plaintiffs/Relators respectfully request this Court enter judgment against

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 22 of 25*

MSA as follows:

a.  MSA  be compelled to cease and desist its perpetration of violations of the False Claims
    Act, 31 U.S.C. §§ 3729 et seq.;

b.  MSA  pay an amount equal to three times the amount of damages the United States has
    sustained due to its actions, plus a civil penalty against MSA of not less than $5,500 and
    not more than $11,000 for each violation of 31 U.S.C. § 3729;

c.  Plaintiffs/Relators be awarded the maximum amount allowed pursuant to 31 U.S.C. §
    3730(d);

d.  Plaintiffs/Relators be awarded all costs of this action, including attorney's fees, expenses,
    and costs pursuant to 31 U.S.C. § 3730(d) and (h); and

e.  The United States and Plaintiffs/Relators be granted all such other relief as the Court
    deems just and proper and demands a trial by jury of all issues triable as a matter of law.

## COUNT III
## Payment by Mistake of Fact

62.     Plaintiffs/Relators re-allege and incorporate the allegations of paragraphs 1- 51.

63.     This is a claim for the recovery of monies paid by the United States to MSA as a
result of mistaken understandings of fact.

64.     The false claims, statements and records submitted or caused to be submitted to
the United States and its agents were paid by the United States based upon mistaken or erroneous
understandings of material fact.

65.     The United States, acting in reasonable reliance on the truthfulness of the claims
and the truthfulness of certifications and representations by MSA, paid to MSA certain sums of
money to which it was not entitled and MSA is thus liable to account and pay such amounts,

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 23 of 25*

which are to be determined at trial, to the United States.

WHEREFORE, Plaintiffs/Relators respectfully request this Court enter judgment against MSA as follows:

a.  MSA  be compelled to cease and desist its perpetration of violations of the False Claims Act, 31 U.S.C. §§ 3729 et seq.;

b.  MSA  pay an amount equal to the damages sustained by the United States, plus interest, costs and expenses;

c.  Plaintiffs/Relators be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

d.  Plaintiffs/Relators be awarded all costs of this action, including attorney's fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d) and (h); and

e.  The United States and Plaintiffs/Relators be granted all such other relief as the Court deems just and proper and demands a trial by jury of all issues triable as a matter of law.

### COUNT IV
### Unjust Enrichment

66.     Plaintiffs/Relators re-allege and incorporate the allegations of paragraphs 1- 51.

67.     This is a claim for the recovery of monies by which MSA has been unjustly enriched.

68.     By directly or indirectly obtaining Government funds to which MSA was not entitled, MSA was unjustly enriched and is liable to account and pay such amounts, or the proceeds therefrom, which are to be determined at trial, to the United States.

WHEREFORE, Plaintiffs/Relators respectfully request this Court enter judgment against MSA as follows:

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 24 of 25*

a.  MSA  be compelled to cease and desist its perpetration of violations of the False Claims Act, 31 U.S.C. §§ 3729 et seq.;

b.  MSA  pay an amount equal to the damages sustained by the United States, plus interest, costs and expenses;

c.  Plaintiffs/Relators be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

d.  Plaintiffs/Relators be awarded all costs of this action, including attorney's fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d) and (h); and

e.  The United States and Plaintiffs/Relators be granted all such other relief as the Court deems just and proper and demands a trial by jury of all issues triable as a matter of law.

DATED this ⟍ day of December, 2012.

Respectfully Submitted,

Randy Rosenblum, Esq.
FBN 983527
rrosenblum@litigationpartners.net
James Hannon, Esq.
FBN 817740
jhannon@litigationpartners.net
LITIGATION PARTNERS, P.L.
Counsel for Plaintiffs/Relators
Two South Biscayne Boulevard, Suite 3100
Miami, Florida 33131
Tel:       (866) 558-4259
Fax:      (305) 577-8230

*United States of America, ex rel. Jan Watford-Granger and Patrick Conlisk vs.*
*Medical Services of America, Inc.*
*Amended Qui Tam Complaint Pursuant to 31 USC §3729-3732 of the Federal False Claims Act*
*Page 25 of 25*

## DEMAND FOR JURY TRIAL

Plaintiffs/Relators, Jan Watford-Granger and Patrick Conlisk, hereby demand a trial by jury of all issues triable of right by a jury.

Dated this ____ day of December, 2012.

Respectfully Submitted,

_____
Randy Rosenblum, Esq.
FBN 983527
rrosenblum@litigationpartners.net
James Hannon, Esq.
FBN 817740
jhannon@litigationpartners.net
LITIGATION PARTNERS, P.L.
Counsel for Plaintiffs/Relators
Two South Biscayne Boulevard, Suite 3100
Miami, Florida 33131
Tel:      (866) 558-4259
Fax:      (305) 577-8230